**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| PEDRO TORRES, | ) | CASE NO:    1:09 CV 191 |
| | ) | |
| Petitioner, | ) | JUDGE NUGENT |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| MAGGIE BEIGHTLER, WARDEN, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the undersigned Magistrate Judge pursuant to Local Rule

72.2.  Petitioner, Pedro Torres ("Torres"), challenges the constitutionality of his

conviction in the case of *State v. Torres*, Case No. 00 CR 000597,  Lake County, Ohio

Court of Common Pleas.  Torres filed a Petition for Writ of Habeas Corpus pursuant to

28 U.S.C. § 2254 on February 10, 2009 in the United States District Court for the

Northern District of Ohio.  (Doc. 1.)  For the reasons set forth below, the Petition should

be **DENIED**.

## I.  FACTUAL BACKGROUND

The Eleventh Appellate District Court of Ohio set forth the facts of this case on

direct appeal:

> The charges arose out of various home break-ins that occurred over a span of four counties and included three other co-defendants.  Appellant stole firearms, personal mementos, and a dog from one victim.  The victims suffered serious psychological harm and expressed living in fear as a result of the offenses committed.  At the time he committed the instant offenses, he had at least three active warrants out for him.  Appellant committed crimes as a juvenile which continued into adulthood.  His history of criminal convictions includes theft related offenses, crimes of violence, and several charges of burglary.  He has not responded favorably to previously imposed sanctions.  Also, psychological testing indicated a high risk for future criminal behavior, violence, and substance abuse problems.

(Exhibit 25.)

## II.  PROCEDURAL HISTORY

### A.    State Conviction

On February 16, 2001, the Lake County Grand Jury indicted Torres on one count of engaging in a pattern of corrupt activity, four counts of burglary, five counts of burglary with firearm specifications, eight counts of theft, five counts of grand theft with firearm specifications, two counts of grand theft, and one count of receiving stolen property.  (Exhibit 1.)  Torres pled not guilty to all counts and specifications in the indictment.  On May, 1, 2001, Torres withdrew his former pleas and entered guilty pleas to count one, engaging in a pattern of corrupt activity; count four, burglary; counts five, eight, nine and ten, burglary with a one year firearm specification attached to each count; and count twenty-six, receiving stolen property.  (Exhibit 2.)   At the motion of the State, the trial court dismissed the balance of the charges.

The trial court sentenced Torres to serve one year each on each of the firearm specifications set forth in counts five, eight, nine and ten; four years on count one; three years each on counts four, five, eight, nine and ten; and one year on count twenty-six.

All counts and specifications are to run consecutively with one another for a total sentence of twenty-four years.  (Exhibit 3.)

**B.      Direct Appeal**

On July 5, 2001, Torres, through counsel, filed a notice of appeal with the Eleventh District Court of Appeals. (Exhibit 4.)  On October 2, 2001, counsel for Torres filed a brief and raised the following sole assignment of error:

1.      The trial court erred to the prejudice of the defendant-appellant when it ordered consecutive sentences.

(Exhibit 5.)  The State filed an opposition brief.  (Exhibit 6.)  On April 14, 2003, the court of appeals, holding that the trial court failed to state its reasoning for imposing consecutive sentences pursuant the then-controlling Ohio statute, granted Torres's assignment of error and remanded his case to the trial court for re-sentencing. (Exhibit 7.)

**B.      Re-sentencing**

On remand, the trial court again ordered Torres to serve one year each on each of the firearm specifications set forth in counts five, eight, nine and ten; four years on count one; three years each on counts four, five, eight, nine and ten; and one year on count twenty-six.  All counts and specifications are to run consecutively with one another for a total sentence of twenty-four years. (Exhibit 8.)

**C.      Direct Appeal of Re-sentencing**

On September 25, 2003, Torres, through counsel, appealed his sentence to the Eleventh District Court of Appeals. (Exhibit 9.)  Torres filed his merit brief on January 13, 2004, asserting the following assignments of error:

-3-

1.   The trial court violated appellant's rights to equal protection and due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution and under Section 2, 10 and 16, Article I, of the Ohio Constitution when it sentenced him contrary to R.C. 2929.11(B).

2.   The trial court ruled contrary to law when it ordered consecutive sentences.

(Exhibit 10).

The State filed a reply brief on February 2, 2004. (Exhibit 11).  On September 17,

2004, Torres filed a motion for leave to file an assignment of error *instanter.*  (Exhibit

12.)  In that supplemental assignment of error, Torres asserted:

1.   The trial court erred when it sentenced the defendant-appellant to consecutive sentences based upon a finding of factors not found by the jury or admitted by the defendant-appellant in violation of the defendant-appellant's state and federal constitutional rights to trial by jury.

(Exhibit 13.)  On September 30, 2004, the court granted leave and accepted Torres's

previously filed supplemental assignment of error.  (Exhibit 14.)  The State filed a

response to the supplemental assignment of error. (Exhibit 15.)  On April 17, 2006, the

court of appeals remanded Torres's case to the trial court for re-sentencing pursuant

*State v. Foster*, 103 Ohio St.3d 1 (2006). (Exhibit 16.)

**D.     Second Re-sentencing**

On May 17, 2006, the trial court sentenced Torres to one year each on each of

the firearm specifications set forth in counts five, eight, nine and ten; four years on count

one; three years each on counts four, five, eight, nine and ten; and one year on count

twenty-six.  Like his previous sentences, all counts and specifications are to run

consecutively with one another for a total sentence of twenty-four years. (Exhibit 17.)

**E.     Direct Appeal of Second Re-sentencing**

On June 20, 2006, Torres, through counsel, filed a notice of appeal with the

Eleventh District Court of Appeals. (Exhibit 18.)  On August 16, 2006, Torres filed a

brief.  On August 23, 2006, Torres filed an amended brief raising the following

assignments of error:

1.     The trial court erred when it sentenced the defendant-appellant to more-than-minimum prison term in violation of the due process and ex post facto clauses of the Ohio and United States Constitutions.

2.     The trial court erred when it sentenced the defendant-appellant to consecutive prison terms in violation of defendant-appellant's right to due process.

3.     The trial court erred when it sentenced the defendant-appellant to consecutive prison terms based on the Ohio Supreme Court's severance of the offending provisions under *Foster*, which was an act in violation of the principle of separation of power.

4.     The trial court erred when it sentenced the defendant-appellant to consecutive prison terms contrary to the rule of lenity.

5.     The trial court erred when it sentenced the defendant-appellant to consecutive prison terms contrary to the intent of the Ohio Legislators.

(Exhibit 19.)  The State replied. (Exhibit 20.)  On June 18, 2007, the court of appeals

affirmed the judgment of the trial court. (Exhibit 21.)

Torres, through counsel, filed a notice of appeal of this judgment with the Ohio

Supreme Court. (Exhibit 22.)  Torres filed a memorandum in support of jurisdiction

asserting the following propositions of law:

1.     A trial court violates an individual's rights under due process and the ex post facto clauses of the Ohio and United States Constitutions when it sentences the individual to more-than-minimum and consecutive prison terms that were not available to the court at the time the individual committed the offense.

-5-

2.      A trial court violates an individual's rights to due process when it
sentences the individual to more-then-the-minimum and consecutive
prison terms with no additional findings made by a jury and when the
individual had no actual or constructive notice of the possible sentences.

3.      A trial court violates the principle of separation of powers provided in the
United States and Ohio Constitution by sentencing an individual to
more-than-the-minimum and consecutive prison terms based on this
Court's severance of the offending statute provisions under Foster.

4.      A trial court violates the rule of lenity when it imposes
more-than-the-minimum and consecutive prison terms upon an individual
where the rule of lenity dictated a lesser penalty.

5.      A trial court's decision to sentence an individual to
more-than-the-minimum and consecutive prison terms is contrary to the
intent of the Ohio Legislature who drafted sentencing provisions with the
clear intent of limiting judicial discretion to impose such sentences.

(Exhibit 23.)  The State filed a memorandum in response. (Exhibit 24.)  On November

28, 2007, the Ohio Supreme Court issued an entry dismissing Torres's appeal. (Exhibit

25.)

**F.      Federal Habeas Corpus**

Torres, through counsel, filed the instant petition for a writ of habeas corpus on

February 10, 2009, and asserted the following grounds for relief:

GROUND ONE: A trial court violates an individual's rights under the Due Process
and Ex Post Facto Clauses of the United States Constitution when it sentences
the individual to more-than-the minimum and consecutive prison terms that were
not available to the court at the time the individual committed the offense.

GROUND TWO: The trial court violates an individual's rights to due process
when it sentences the individual to more-than-the minimum and consecutive
terms with no additional findings made by a jury and when the individual had no
actual or constructive notice of the possible sentences.

(Doc. 1.)

-6-

## III.  ANALYSIS

### A.     Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered the

standard of review that a federal court must apply when deciding whether to grant a writ

of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence.  *Carey v.*

*Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is

"clearly established" only by holdings of the Supreme Court, not its *dicta*, and the law

must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at

74.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

-7-

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply.  *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence."  *Id.*

### B.      Review on the Merits

In Ground One, Torres asserts that the sentencing court violated his rights under the due process and *ex post facto* clauses when it imposed more-than-the-minimum and consecutive prison terms because such a sentence was unavailable at the time Torres committed his offenses.   In Ground Two, Torres argues that the sentencing court violated his due process rights when it sentenced him to more-than-the-minimum and consecutive prison terms with no fact-finding by a jury.

At the time that Torres pleaded guilty, Ohio Rev. Code § 2929.14 ("§ 2929.14") governed sentencing in Ohio.  Section 2929.14(B) provided as follows:

-8-

(B)  Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925 of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:

    (1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.

    (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington*, 542 U.S. 296 (2004).  *Blakely* held that the maximum sentence to which a court may sentence a defendant is the maximum sentence the court may impose solely on the basis of a prior conviction, facts reflected in the jury verdict, or facts admitted by the defendant.  *Blakely*, 542 U.S. at 303.  That is, the court may not enhance a defendant's sentence on the basis of judicial findings of fact other than notice of a prior conviction.

On February 27, 2005, the Ohio Supreme Court decided *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E.2d 470 (2006).  In *Foster*, the Ohio Supreme Court overturned O.R.C. §§ 2929.14(B) & 2929.41(E)(4) as unconstitutional in light of *Blakely. Foster* severed these unconstitutional portions of Ohio's sentencing statutes and preserved most of the remainder of the statutes.  The Ohio Supreme Court held that the resulting statutes allowed a court to sentence a defendant to any sentence within the sentencing range of an offense and to consecutive sentences without making judicial findings of fact of the sort barred by *Blakely*.

On May 17, 2006, pursuant to a remand by the appellate court, the trial court re-

-9-

sentenced Torres in accordance with *Foster*.  The trial court sentenced Torres to a term

of imprisonment identical to his earlier sentences.  Torres asserts his post-*Foster*

sentence violated the due process and *ex post facto* clauses and that his sentence

should have been the minimum sentence because a jury made no findings of fact.

In a brief opinion, the appellate court upheld Torres's re-sentencing, based on its

earlier decision in *State v. Elswick*, 2006 WL 3833868 (Ohio App. 2006).   In *Elswick*,

the court held:

> With respect to his first and second assignments of error, appellant raises an
> issue of first impression for our court.  However, other appellate districts have
> considered the question and concluded that *State v. Foster*, 109 Ohio St.3d1,
> 2006 Ohio 856, 845 N.E.2d 470, does not violate due process and the *ex post
> facto* clause because defendants face the same potential sentences as the did
> before *Foster* was decided. *  *   *  *

> With respect to the federal constitutional considerations, due process guarantees
> notice and a hearing.  The right to a sentencing hearing has not been implicated
> by *Foster*.  Thus, we are only concerned with the issue of warning as to potential
> sentences.   Federal circuit courts have determined that *United States v. Booker*
> (2005), 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed. 2d 621, does not violate the *ex
> post facto* clause because there has been no due process violation.

> Most circuit courts have held that defendants were on notice with respect to
> statutory maximums, regardless of whether the federal sentencing guidelines
> were mandatory.   *   *   *   *

> Similarly in Ohio, prior to *Foster*, individuals who decided to commit crimes were
> aware of what the potential sentences could be for the offenses committed.  R.C.
> 2929.14(A).  Here, appellant pleaded guilty to count one . . . and count two. . . .
> The indictment alleged that appellant committed the foregoing offenses on
> December 21, 2005.   Thus, appellant's offenses were committed before *Foster*,
> but after *Apprendi v. New Jersey* (2000) 530 U.S. 466, *Blakely v. Washington*
> (2004), 542 U.S. 296, and *Booker, supra*.

> There was no legislative alternation of Ohio's sentencing code post *Foster*.
> Appellant understood and signed his plea agreement, specifying the code
> provisions in effect at that time, which again, have not changed or been enlarged
> in any manner after *Foster*. * * * *

-10-

Appellant knew the potential statutory sentence, had notice that Ohio's sentencing statues were subject to judicial scrutiny, and was unlikely to amend his criminal behavior in light of a sentencing change.  Therefore, this court cannot hold that *Foster* violates federal notices of due process as established in *Bouie v. Columbia* (1964), 378 U.S. 347, and *Rogers, supra*.

The state court's decision is neither contrary nor an unreasonable application of clearly established federal law.

Article I, § 9 of the United States Constitution provides that no state shall pass *ex post facto* laws. U.S. Const, Art. I, § 9.  The Constitution's bar against *ex post facto* laws, however, does not apply to courts:

> Extending the [*Ex Post Facto*] Clause to courts through the rubric of due process . . . would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decision making, on the other.

*Rogers v. Tennessee,* 532 U.S. 451, 460 (2001).

Although the *ex post facto* clause does not apply to courts, "limitations on *ex post facto* judicial decision making are inherent in the notion of due process."  *Id.* at 456.  In particular, the Supreme Court has found that court may not unexpectedly and indefensibly construe a criminal statute so as to criminalize conduct which had not been criminal prior to the court's new construction.  *See Bouie v. City of Columbia*, 378 U.S. 347 (1964).  The Supreme Court has explicitly declined, however, to apply all the protections of the *ex post facto* clause to courts by way of the due process clause.  *Id.* at 458-61.

*Foster* differs considerably from *Bouie.*  The judicial enlargement of a criminal statute in *Bouie* was very different from the alleged enlargement in *Foster*.  In *Bouie*, a South Carolina statute prohibited entry onto land after the posting of notice prohibiting

-11-

such entry.  Defendants were arrested pursuant to that statute during a lunch counter sit-in for civil rights when they were ordered to leave after being notified that they were trespassing if they remained.  The defendants had not been given notice prohibiting their entry to the lunch counter prior to their entry.

Upon appeal, the South Carolina supreme court re-interpreted the relevant statute to prohibit remaining on a property after notice was given as well as entry onto the property.  The United States Supreme Court struck down the convictions and agreed with the appellants that South Carolina had punished them for conduct that was not criminal at the time they committed it, thus violating the requirement of the due process clause that a criminal statute give fair warning of the conduct which it prohibits.  According to the Court, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect."  *Bouie*, 378 U.S. at 354 (quoting Hall, GENERAL PRINCIPLES OF CRIMINAL LAW (2d ed. 1960), at 61).

*Foster* did not criminalize any conduct which had not been criminal prior to the decision.  Nor did *Foster* increase the maximum penalty that could be handed down for a crime.  Rather, *Foster* excised those portions of Ohio's sentencing statute that required judicial findings of fact before a court could sentence a defendant to more than a minimum sentence or to consecutive sentences.  *Bouie* does not prohibit this.

Torres's position is also foreclosed in part by *Dobbert v. Florida*, 432 U.S. 282 (1977).  As the Eleventh Circuit first pointed out in *United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2006), *Dobbert* held that even a law later found to be unconstitutional may give fair warning of what is prohibited and of the penalties the state intends to

exact for violating those prohibitions:

> Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers.  The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability to which the State ascribed to the act of murder.

*Duncan*, 400 F.3d at 1307-08.

Similarly, although portions of Ohio's sentencing statutes at the time of Torres's criminal acts were unconstitutional, they nevertheless gave him fair notice of the acts that were prohibited and the degree of punishment which the Ohio legislature wished to impose on those who committed those acts.  As the reinterpreted statute did not increase the maximum penalty to which Torres was potentially subject, Torres was given fair warning of what was prohibited and of the potential penalties to which he would be subject if he committed those acts.  *See United States v. Alston-Graves*, 435 F.3d 331, 343 (D.C. Cir. 2006); *United States v. Vaughn*, 430 F.3d 518, 524-25 (2d Cir. 2005); and *United States v. Lata*, 415 F.3d 107, 112 (1st Cir. 2005).

In addition, Torres's position is contradicted by *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.  In *Booker*, the Supreme Court confronted the constitutionality of a federal sentencing statute that resembled Ohio's insofar as it required specified judicial findings of fact for upward departures from a base sentence. The Court found that such mandatory fact-finding violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000)*,* and excised those portions of the statute requiring judicial fact-finding before increasing a base sentence.  The Supreme Court also allowed sentencing courts to engage in fact-finding in determining sentences by using

-13-

the previously-mandatory sentencing factors as guidelines that should be considered in sentencing.  The Court required other federal courts to apply both parts of its holding--striking the mandatory findings on Sixth Amendment grounds and using the previously-mandatory factors as guidelines – to future cases because applying both holdings in combination best approximated the will of Congress in enacting sentencing reform.  *Id.* at 249.  Finally, the Court struck those sections of the statute requiring a relatively strict appellate review for departures from mandatory sentencing guidelines and found that the resulting statute implied appellate review under a "reasonableness" standard.  *Id.* at 259-60.

When the Ohio Supreme Court determined that Ohio's sentencing statutes violated the holding in *Blakely*, it explicitly turned to *Booker* to cure the statutes' unconstitutionality.  *Foster*, 109 Ohio St. 3d at 26-27, 845 N.E.2d at 495-96.  Thus, the Ohio Supreme Court excised those portions of the statutes requiring judicial fact-finding using certain factors before making upward departures from a base sentence or before sentencing to consecutive sentences.  *Id.*, 109 Ohio St. 3d at 28-30, 845 N.E.2d at 497-98.  It also instructed Ohio courts to use the factors enumerated in the statutes as guidelines in making sentencing determinations.  *Id.*, 109 Ohio St. 3d at 30, 845 N.E.2d at 498.  Sentencing courts were thus free to sentence defendants anywhere within the sentencing ranges set by the Ohio legislature for various crimes or to consecutive sentences, using the previously-mandatory factors as guidelines to determine where in the range a defendant should be sentenced.  The resulting statutes, according to the Ohio Supreme Court, best approximated the will of the legislature in passing the sentencing statutes while doing away with the statutes' unconstitutionality.  *Id.*

-14-

Torres argues that the *Foster* severance remedy is not analogous to the *Booker* remedy.   Torres asserts, "[i]n *Booker*, only a limited portion of the federal sentencing statue was severed, and the significant parts of the statute designed to effect Congressional intent were maintained."  (Doc. 10 at 10-11.)    In *Foster*, the Ohio Supreme Court severed the subsection that "'require[d] sentencing courts to impose a sentence within the applicable Guideline range. . . and the provision that set forth standards of review on appeal.'" *Foster*, 845 N.E. 2d at 496, n. 97.   Torres argues that *Foster's* severance scheme essentially eliminates appellate review and disposes of the legislature's goal of establishing uniformity and proportionality in Ohio's criminal sentencing scheme.

While Torres is correct that *Foster's* severance scheme is not identical to *Booker's*, this difference does not rise to the level of a constitutional violation.  As explained by the Southern District of Ohio:

> Whenever a court applies a severance remedy, its purported objective is to maintain as much of what the legislature adopted as is consistent with whatever constitutional provision is being applied.  This always leaves the legislature free to act again, to say in effect, "That's not what we meant or wanted."  With both *Booker* and *Foster*, many expected follow-on legislation, but none has come.  But unless the statute without the excised portions itself falls below a constitutional minimum, no defendant is harmed.  That is, no Ohio felon was constitutionally entitled to have the presumptions enacted in S.B.2 and no federal felon was constitutionally entitled to have a mandatory guideline regime.

*Garrett v. Warden*, 2009 WL 1416047, *5 (S.D. Ohio 2009).   As Torres has only demonstrated that *Foster's* severance scheme differs from *Booker's* severance scheme, not that *Foster's* approach was in violation of the Constitution, Torres fails to show that Ohio courts have unreasonably applied *Booker*.

Torres also argues that "the Supreme Court of Ohio most likely severed a

-15-

constitutional sentencing presumption in *Foster*," when it eliminated the presumption

against consecutive sentences.   (Doc. 10 at 10.)  In support of this argument, Torres

cites *Oregon v. Ice*, ___ U.S. ___, 129 S.Ct. 711 (2009).

      However, *Ice* is inapposite.  In *Ice*, the Supreme Court determined that the

imposition of consecutive sentences based on judicial fact-finding rather than facts

determined by a jury, does not violate the right to trial by jury.    Essentially, no Sixth

Amendment concerns are triggered by the imposition of consecutive sentences.

Moreover, as noted recently by the Ohio Supreme Court in *State v. Elmore*, ____

N.E.2d___, 2009 Ohio 3478, 12 (Ohio 2009) (slip opinion):

> *Foster* did not prevent the trial court from imposing consecutive sentences; it
> merely took away a judge's duty to make findings before doing so.  The trial court
> thus had authority to impose consecutive sentences on [defendant].

      Finally, Petitioner argues that *Miller v. Florida*, 482 U.S. 423 (1987), "the United

States Supreme Court vacated a defendant's sentence based on the same basic

constitutional concerns that invalidate the remedy brought forth in Foster." (Doc.10 at

7.)  However, the revised sentencing guidelines at issue in *Miller* were the result of a

legislative act, not a judicial order.   Thus, *Miller* was decided on the *ex post facto*

clause's more expansive protections against retroactivity, rather than the more limited

due process protections that are employed when analyzing a judicial act.

      Federal district courts have repeatedly rejected constitutional challenges to

*Foster*.  *Wright v. Pickaway Corr. Inst.*, ___ F. Supp.2d ___, 2009 WL 1850170 (S.D.

Ohio 2009), citing *Rettig v. Jefferys*, 557 F. Supp.2d 830, 841 (N.D. Ohio 2008); *Hooks*

*v. Sheets*, 2008 WL 4533693 (S.D. Ohio 2008); *Collins v. Warden*, *Chillicothe Corr.*

*Inst.*, 2008 WL 728390 (S.D. Ohio 2008); *Parker v. Warden*, 2008 WL 4547490 (S.D.

-16-

Ohio 2008).    Accordingly, the state court's holding that Torres's *post-Foster* sentencing

is constitutional is not contrary to or an unreasonable application of clearly established

federal law.  Therefore, Torres's habeas petition should be denied.

### V.  CONCLUSION

For the foregoing reasons, Torres's petition for habeas relief should be **DENIED**.


Date: July 30, 2009                              /s/ *Nancy A. Vecchiarelli*
                                                 United States Magistrate Judge



### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

-17-